

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SIMON BATASHVILI | No. 3:25-CR-343-X<br><br>**(Supersedes indictment returned July 22, 2025)** |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

At all times material to the indictment:

### Introduction

1. From at least as early as September 1, 2017, through in or around September 2020, in the Northern District of Texas, Dallas Division, and elsewhere, defendant **Simon Batashvili**, together with others known and unknown to the Grand Jury, orchestrated a scheme to defraud investors out of millions of dollars by fraudulently inducing them to purchase gold and silver coins at prices grossly inflated beyond their actual value.

2. **Batashvili** owned and operated several companies (collectively referred to as "Metals.com"), that falsely presented themselves as trustworthy dealers in precious metals. Through aggressive marketing and deceptive sales tactics, Metals.com induced primarily elderly individuals to use their retirement savings and personal funds to purchase coins under false and misleading pretenses.

3. **Batashvili** and Metals.com repeatedly misled investors about the true value of the coins, including by failing to disclose that Metals.com bought the coins at a fraction of the price charged to investors; falsely claiming that Metals.com's markups were low when they were as high as 250%; and falsely claiming that the coins were rare and worth more than the market price of gold and silver.

4. As a result of this fraudulent scheme, **Batashvili** and Metals.com profited at least $70 million.

## Parties

5. Defendant **Simon Batashvili** was a resident of Los Angeles, California.

6. **Batashvili** co-founded and controlled Metals.com, including its predecessor Chase Metals and successor entities Barrick Capital, Newmont, Glencore, and USA Mint (collectively, "Metals.com").

7. Metals.com sold gold and silver coins to customers across the United States, including in the Northern District of Texas.

8. Metals.com maintained offices in Beverly Hills, California.

9. Company A was a precious metals supplier located in or around Los Angeles, California.

10. Individual A was a resident of Fort Worth, Texas.

11. Individual B was a resident of Terrell, Texas.

## Scheme to Defraud

12.     Between approximately September 2017 and September 2020, within the Northern District of Texas and elsewhere, **Batashvili** knowingly and willfully devised a scheme to defraud investors and obtain their money by misleading them about the nature and value of the gold and silver coins Metals.com was selling.

## Object and Purpose of the Scheme

13.     The purpose of the scheme was to unjustly enrich **Batashvili** and others by misleading investors through false and deceptive representations to investors regarding the investors' purchase of gold and silver coins, causing them to pay vastly inflated prices without knowing the true value of the coins.

14.     As part of the scheme, **Batashvili** and Metals.com specifically targeted elderly investors by claiming that the stock market was volatile and that gold and silver coins were a safer alternative.

15.     Investors were misled into using their retirement or savings accounts to purchase gold and silver coins.

16.     **Batashvili** used only a portion of investors' funds to buy the coins from metals suppliers, such as Company A, and kept the rest of the funds for himself and others.

17.     Even after state regulators began filing civil enforcement actions against Metals.com for deceptive practices, **Batashvili** continued to operate Metals.com under a different name and continued misleading investors using the same tactics and exorbitant markups.

18. **Batashvili** concealed the proceeds of the scheme by transferring investor funds from business accounts associated with Metals.com to non-Metals.com business accounts owned and controlled by him.

## Manner and Means of the Scheme

19. The manner and means by which **Batashvili** carried out the scheme, included the following:

20. **Batashvili** and Metals.com targeted elderly individuals, located in the Northern District of Texas and elsewhere, with available assets to induce those individuals to buy gold and silver coins;

21. At the direction of **Batashvili**, salespeople dubbed "junior brokers" or "dialers" cold-called potential investors to identify those with assets available to purchase coins;

22. At the direction of **Batashvili**, dialers then handed off the investors to "senior brokers" or "closers" to get the investors to commit to purchase coins;

23. **Batashvili** personally set the retail prices of the gold and silver coins and authorized what salespeople could charge;

24. For investors who used assets in their retirement accounts to pay for the purchase of coins, Metals.com employees guided investors through the setup of Self-Directed IRAs ("SDIRAs"). Metals.com then handled all aspects of moving the funds, including sometimes filling out forms in the investors' name, providing the paperwork to the SDIRAs, and coaching investors through any phone calls necessary to liquidate assets in their retirement accounts and move them to the new SDIRA;

25. For investors who used assets in non-retirement accounts, Metals.com employees directed the investors to wire funds or send checks payable to a bank account controlled by **Batashvili**;

26. Once an investor had sent the money to Metals.com, Metals.com purchased the gold and silver coins from precious metals suppliers, such as Company A. **Batashvili** negotiated the price at which Metals.com would purchase the gold and silver coins from precious metals suppliers such as Company A and kept the markup hidden from investors;

27. After purchasing the coins from precious metals suppliers, **Batashvili** and Metals.com had the gold and silver coins shipped to a metals depository or, in some cases, directly to investors, via mail or private and commercial interstate carrier;

28. Metals.com employees, acting at the direction of **Batashvili**, emailed Account Agreements and Shipping and Transaction Agreements to investors who purchased gold and silver coins. Investors were required to sign these agreements, which failed to fully disclose the size of the markup;

29. The Shipping and Transaction Agreements misleadingly stated that Metals.com charged a standard "markup" or "spread" on the sale of gold and silver coins, defined as the difference between Metals.com's purchase price from its supplier and the price charged to investors. The agreements gave an expected range for this markup, but failed to disclose that Metals.com also charged additional undisclosed commissions and fees;

30. In truth, **Batashvili** and Metals.com set markups that were significantly higher than the range disclosed in the Shipping and Transaction Agreements and knowingly misled investors about the price spread. Because **Batashvili** negotiated the price at which Metals.com bought the gold and silver coins from suppliers and set the price that Metals.com charged investors, **Batashvili** knew that Metals.com was charging a significantly higher spread to investors than what was represented to investors in the Shipping and Transaction Agreements;

31. At times, investors would learn the true—and much lower—value of their purchased gold and silver coins. If an investor contacted Metals.com to find out what happened to his or her investment, Metals.com, at the direction of **Batashvili** and others, attempted to delay the investor from taking action, misleading victims further by casting doubt on third-party valuations;

32. Beginning in or about May 2019, at least 12 state securities boards, including the Texas State Securities Board, issued enforcement actions (collectively, "State Complaints") citing misleading and deceptive sales tactics by Metals.com.

33. In response to these State Complaints, in August 2019, **Batashvili** rebranded the operation under a new name, Barrick Capital. Barrick Capital was also owned and controlled by **Batashvili**, had the same offices and employees as Metals.com, and continued to engage in the same fraudulent practices;

34. Barrick Capital, under the direction of **Batashvili**, continued to sell gold and silver coins using the same deceptive tactics and pricing structure as Metals.com. **Batashvili** and Metals.com misled customers about the true value of the coins by failing

to disclose the excessive markups Barrick Capital was charging compared to both the current market value of the coins and the price Barrick had paid to acquire them from metals suppliers;

35. Customers were never told that Barrick was a rebranded version of Metals.com, a company under investigation by numerous states;

36. **Batashvili** and Barrick concealed the existence of the State Complaints from investors;

37. **Batashvili** diverted investor funds for his personal use, sales commissions, unrelated businesses, and other expenses;

38. **Batashvili** transferred proceeds of the scheme from Metals.com related accounts such as those in the name of Barrick Capital and USA Mint to accounts in the name of other entities owned and controlled by Batashvili to conceal the proceeds. For example, between September 18, 2020 and September 24, 2020, Batashvili transferred or caused to be transferred approximately $2,415,946.46 of investor funds that originated in Metals.com related accounts to an account in the name of an entity DE Wholesale. That account was owned and controlled by **Batashvili**; and

39. **Batashvili** knew and intended that his false and fraudulent pretenses and representations would induce victims to purchase gold and silver coins from Metals.com and cause them to suffer substantial financial losses while he benefited from the fraudulent scheme.

Counts One and Two
Mail Fraud
(Violation of 18 U.S.C. § 1341)

40.     All previous paragraphs of this indictment are realleged and incorporated by reference as though fully set forth herein.

41.     From in or about September 2017 through in or about September 2020, within the Northern District of Texas and elsewhere, defendant **Simon Batashvili**, with intent to defraud, knowingly devised and intended to devise the aforesaid scheme and artifice to defraud investors, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

42.     On or about each of the dates set forth below, in the Northern District of Texas and elsewhere, defendant **Simon Batashvili**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud investors, did knowingly and willfully cause to be delivered by mail or a private and commercial interstate carrier, gold and silver coins, each mailing constituting a separate count:

| Count | Date | Mailing |
|---|---|---|
| 1 | July 29, 2020 | Company A caused to be shipped gold and silver coins from Wilmington, Delaware to Individual A in Fort Worth, Texas to complete the sale of gold and silver coins to Individual A. |
| 2 | August 24, 2020 | Company A caused to be shipped gold and silver coins from Los Angeles, California to Individual B in Terrell, Texas to complete the sale of gold and silver coins to Individual B. |

In violation of 18 U.S.C. § 1341.

Count Three
Wire Fraud
(Violation of 18 U.S.C. § 1343)

43. Paragraphs 1 through 39 are realleged and incorporated by reference as though fully set forth herein.

44. From in or about September 2017 through in or about September 2020, within the Northern District of Texas and elsewhere, defendant **Simon Batashvili**, with intent to defraud, knowingly devised and intended to devise the aforesaid scheme and artifice to defraud investors, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

45. On July 27, 2020, in the Northern District of Texas and elsewhere, defendant **Simon Batashvili**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud investors, knowingly transmitted or caused to be transmitted by means of wire and radio communication in interstate commerce, certain writings, signs, signals, pictures and sounds, to wit: a wire transfer initiated by Individual A in Fort Worth, Texas from his Charles Schwab account ending in 5797 to Barrick Capital's Wells Fargo account ending in 9973 in Los Angeles, California to purchase gold and silver coins.

In violation of 18 U.S.C. § 1343.

Count Four
Money Laundering
(Violation of 18 U.S.C. § 1956(a)(1)(B)(ii))

46. Paragraphs 1 through 39 are realleged and incorporated by reference as though fully set forth herein

47. On or about September 24, 2020, in the Dallas Division of the Northern District of Texas and elsewhere, defendant **Simon Batashvili**, did knowingly conduct or attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit: transferring $425,000 from Barrack Capital's bank account ending in 9973 to DE Wholesale's Account ending in 0784, which involved the proceeds of a specified unlawful activity, that is Mail Fraud and Wire Fraud as alleged in Counts One through Three, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity

In violation of 18 U.S.C. § 1956(a)(1)(B)(i).

Notice of Criminal Forfeiture
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1))

48. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any of the offenses alleged in Count One through Count Four, defendant **Simon Batashvili** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offense.

49. Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of the offense alleged in Count Four, defendant **Simon Batashvili** shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property.

50. The property to be forfeited includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense.

51. Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of the defendant;

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States intends to seek forfeiture of any property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL

_____
FOREPERSON

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

_____
MARTY BASU
Assistant United States Attorney
Illinois State Bar No. 6302360
JOSHUA DETZKY
Assistant United States Attorney
New Jersey State Bar No. 037172011
1100 Commerce Street, Suite 300
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Fax: 214-659-8812
Email: marty.basu@usdoj.gov
Email: joshua.detzky@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

SIMON BATASHVILI

SUPERSEDING INDICTMENT

18 U.S.C. § 1341
Mail Fraud
(Counts 1-2)

18 U.S.C. § 1343
Wire Fraud
(Count 3)

18 U.S.C. § 1956(a)(1)(B)(ii)
Money Laundering
(Count 4)

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1)
<u>Notice of Criminal Forfeiture</u>

4 Counts

A true bill rendered

---
DALLAS                                                                FOREPERSON

Filed in open court this _23_ day of September, 2025.

---
**No Warrant Needed**     **Voluntary Appearance**
---

UNITED STATES MAGISTRATE JUDGE
Criminal Case Pending:   3:25-CR-343-X